IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SEDAM V. HOFACKER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PHILLIP J. SEDAM, APPELLANT,

V.

SYDNI A. HOFACKER, NOW KNOWN AS SYDNI A. HAWN, APPELLEE.

Filed December 17, 2019.    No. A-19-089.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

John J. Maynard, of Chatelain & Maynard, for appellant.

Renee L. Mathias, of Schaefer Shapiro, L.L.P., for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Phillip J. Sedam appeals the order of the district court for Douglas County modifying the parenting plan between him and Sydni A. Hofacker, now known as Sydni A. Hawn. Phillip argues the district court abused its discretion by awarding sole custody of the parties' minor child to Sydni and allowing the child to relocate to Michigan. Upon our de novo review of the record, we affirm.

## II. BACKGROUND

Phillip and Sydni are the biological parents of Emery, born in July 2014. They were never married. At the time Emery was born, the couple resided in Nebraska; however, according to Sydni, she returned to Michigan, where she was from and where her family resided, in March 2015. Phillip lived with her there until May 2015, at which time they returned to Nebraska. They returned to Michigan again in December 2015 and Phillip left in March 2016. At that time, the parties agreed to a parenting plan, whereby they shared legal and physical custody of Emery. The

parenting plan provided that Emery would spend 7 consecutive weeks with Sydni in Michigan, and then 7 consecutive weeks with Phillip in Nebraska. The parties agreed to meet in Illinois to exchange custody. The district court adopted the parties' parenting plan in May 2016 and entered a subsequent order in July, approving the same plan.

In July 2017, Phillip filed a complaint to modify the parenting plan, seeking sole legal and physical custody of Emery. Sydni filed a counterclaim, seeking sole legal and physical custody of Emery, as well as seeking permission to remove Emery to Michigan. At a trial in August 2018, Phillip testified in his own behalf, and also had his grandmother, Constance Brewer, and his neighbor, Frank Yates, testify on his behalf. Sydni testified in her own behalf, and she adduced testimony from her boyfriend, Ryan Goschke.

Phillip was 24 years old at the time of trial and lived in Omaha in the same house as his grandmother, father, and Emery when he had custody. Brewer informed the court that her daughter-in-law lived with the family as well, and that Brewer paid the rent, bills, and did the grocery shopping for the family. Phillip was not working at the time of trial due to an accident that occurred in 2016; however, he testified that he had potential leads working at the Omaha zoo or as a security guard. A work restriction from his physician indicated Phillip had been released to return to work with restrictions in March 2018. Phillip also testified that Sydni moved to Michigan in early 2016, and the parties did not have an agreement or understanding about sharing parenting time with Emery when she moved.

Phillip and his witnesses indicated that they had concerns regarding Sydni's care of Emery. Phillip stated that he took Emery to the emergency room following her return from Sydni's care in April 2015 due to bruising he observed on her. (Our record indicates that this visit was made in November 2016). Phillip also informed the court Sydni had made posts on social media referencing marijuana use in the past. Additionally, Phillip was concerned about Sydni's past relationship with Calvin Bishop (the father of Sydni's son) because he was violent toward Sydni and was a known drug user. Phillip also expressed concern that Sydni's current boyfriend, Goschke, was crossing boundaries by being alone with Emery. Finally, Phillip stated that Sydni had sent him nude photos of herself along with sexually suggestive messages in order to gain sole custody of Emery.

Brewer testified that Emery is typically underweight, pale, and tired, on her return from Sydni's care and that she gets nervous and upset and throws up on the return trip to Sydni. Additionally, Brewer has noticed bruising on Emery multiple times when she has returned from Sydni's care, and she has taken Emery to the hospital three or four times upon her return from Sydni's care. Brewer further testified regarding concerning behaviors Emery displayed after returning from Sydni's custody such as gorging herself, hoarding food, and demonstrating purging techniques.

Phillip testified regarding communication issues he and Sydni had. Phillip stated that Sydni violated the parenting plan by failing to allow him to have communication with Emery during her parenting time. Additionally, the parties were able to communicate only over social media. Phillip also stated that Sydni does not keep him updated on Emery's medical matters while she is in Michigan, and he is not listed on Emery's medical records there, which prevents him from obtaining her medical information. On the other hand, Phillip testified that he keeps Sydni updated on Emery's medical concerns while he has custody.

Phillip and his witnesses testified that he had a positive relationship with Emery. Phillip stated that he would take Emery for nature walks, fishing, to the zoo, and museums. Yates testified that Phillip was an "outstanding" father, and Brewer described him as "excellent." Phillip also indicated that he researched schools for Emery to attend, and selected a preschool which was located at the Omaha zoo and was less than four blocks from his home.

On cross-examination, Phillip admitted that he was last employed in March 2018, when he worked at an auto shop for less than 3 months, and prior to that he had been employed at a different auto shop for less than 5 months. Phillip's income for 2017 was only $1,072. He admitted that there were multiple occasions where he could not afford gas to transport Emery for Sydni's parenting time. Phillip further admitted that he was found to be in contempt of court for failing to return Emery to Sydni in 2016. He explained that he filed a protection order on behalf of Emery due to bruising he observed on her and believed that he did not have to return Emery to Sydni until a hearing was held on the protection order; however, he was still found to be in contempt.

Sydni was called as a witness by Phillip and also testified in her own behalf. Her testimony disputed much of Phillip's. Sydni stated that she resided in Michigan when the initial parenting plan was agreed to and had resided in Michigan for the preceding 8 years, with the exception of about 2 years when she was living in Nebraska. Sydni testified that she lived in Michigan with Goschke, Emery, and her son. She also lives very close to her mother and her grandmother, as well as other members of her extended family. Sydni stated that she worked at a restaurant, had been there for 3 years, and had an opportunity to move into a management position, which would increase her income.

Sydni informed the court that she was never in a relationship with Bishop (despite him fathering her son), but he would stay at her apartment occasionally. Although Bishop broke Sydni's finger in an altercation at one point, she ended her relationship with him after that. Bishop lived in Oregon at the time of trial and she did not have contact with him. He was not listed on her son's birth certificate and she did not have a parenting plan in place with him. Sydni admitted to smoking marijuana at the end of 2014, but stated she had not used the drug since then, and she denied creating social media posts referencing drug use. She explained that she "reposted" the social media posts of which Phillip complained more than 2 years before trial. Sydni also refuted Phillip's allegation that she abused Emery and testified that the bruising on Emery's back occurred when she fell while playing.

Sydni acknowledged that she and Phillip do not communicate well and that they do not know how to communicate respectfully with one another. She relayed instances in which Phillip had called for welfare checks when Emery was in Sydni's care, which turned out to be unfounded. Sydni admitted to sending nude photographs to Phillip, but stated that the conversation in which she allegedly offered sex for custody of Emery was initiated by Phillip. Sydni indicated that sending the messages to Phillip was "the stupidest thing" she had ever done and that she only did so to get custody of Emery. She also testified that when Emery was with her, she had a set routine and was enrolled in an early start school program.

Sydni explained the circumstances surrounding Phillip's order of contempt. She stated that although Phillip filed a protection order on behalf of Emery, a hearing was held in July 2016 which dismissed the protection order, and Phillip subsequently failed to return Emery to her. She

emphasized that there was no doubt that the protection order had been dismissed, yet Phillip failed to return Emery.

Goschke testified that he had been in a relationship with Sydni for more than a year. He indicated that he loves Emery, but insists that she call him Ryan. He does not encourage her to call him dad because he believes it is important that she maintain her relationship with Phillip.

After hearing the testimony and evidence, the district court ordered that it was in Emery's best interests that Sydni be awarded legal and physical custody of Emery. The court found that Emery had a good relationship with both parents, was in good health, and was well cared for by both parents. It noted that there was not credible evidence of abuse of Emery by either parent. The court emphasized that Sydni had her own home which was appropriate for Emery and that Emery would live in the same home as her half brother. The court noted that Sydni was employed and had positive career trajectory opportunities, and she was thus able to more independently support Emery than Phillip was. Further, Sydni was in a stable relationship with Goschke, who had a positive relationship with Emery. The court surmised that Sydni may make more effort to communicate with Phillip than Phillip would with her.

The court also addressed Sydni's request to remove Emery to Michigan. The court found that Sydni had a legitimate reason to leave the State, because she was already residing in Michigan when the parenting plan was agreed to. The court also determined that it was in Emery's best interests to relocate to Michigan. It addressed the relevant removal factors and found that Sydni could better support Emery. Finally, the court noted that although allowing Emery to relocate to Michigan would affect Phillip's relationship with her, a liberal parenting plan would allow Phillip to have extended parenting time with Emery. Phillip timely appealed.

### III. ASSIGNMENTS OF ERROR

Phillip assigns, consolidated and restated, that the district court abused its discretion in granting Sydni sole custody of Emery and in allowing Sydni to remove Emery to Michigan.

### IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013). An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *In re Change of Name of Whilde*, 298 Neb. 510, 904 N.W.2d 707 (2017). When the evidence is in conflict, an appellate court considers, and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hiller v. Hiller*, 23 Neb. App. 768, 876 N.W.2d 685 (2016).

### V. ANALYSIS

Phillip assigns that the district court erred and abused its discretion when it granted Sydni custody of Emery and granted her request to remove Emery to Michigan. We disagree.

## 1. CUSTODY

Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). The party seeking modification of child custody bears the burden of showing a change in circumstances. *Id*.

Here, Phillip neither assigns as error nor argues that the court erred in finding a material change in circumstances affecting Emery's best interests; rather, he challenges the court's decision that it was in Emery's best interests to award Sydni custody in Michigan. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). Accordingly, we do not analyze whether a material change in circumstances affecting Emery's best interests occurred, such that a change in custody was warranted. The question of whether it was in Emery's best interests to award custody to Sydni and to relocate Emery to Michigan remains.

A parent seeking to relocate with a child to another state must demonstrate that he or she has a legitimate reason for leaving the state and that it is in the child's best interests to continue living with him or her. *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000); *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999). Where a parent seeks a change in custody and permission for removal, the separate analyses of whether custody should be modified and whether removal should be permitted necessarily become intertwined. *Brown v. Brown, supra*. In other words, the questions whether modification is in the best interests of the children and whether the move to another state is in the best interests of the children inevitably merge into the single question whether the best interests of the children are furthered by the relocating parent obtaining sole physical custody and moving the children out of state. *Id*.

In the present case, Phillip and Sydni shared joint legal and physical custody of Emery, but they already lived in separate states at the time the original parenting plan was entered. Therefore, Sydni is not seeking "relocation" as that term is traditionally used in our removal jurisprudence. However, we must still determine whether the court abused its discretion when it determined that it was in Emery's best interests to award custody to Sydni and to move her to Michigan. As explained in *Brown v. Brown, supra*, these questions merge into the single question whether the best interests of Emery are furthered by Sydni obtaining sole physical custody and moving her to Michigan, which we now address.

Neb. Rev. Stat. § 43-2923 (Reissue 2016) requires a court to consider certain factors relevant to the best interests of the minor child when determining which parent should be awarded custody. These factors in § 43-2923(6) include:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member. . . ; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

In addition to these statutory "best interests" factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

Here, the district court relied on the fact that Sydni had her own home and a job with positive career trajectory possibilities in awarding her custody. The court also noted that Sydni had custody of Emery's half brother in Michigan, was in a stable relationship with Goschke who had a positive relationship with Emery, and may make more effort to communicate about Emery with Phillip than Phillip would with her.

The record supports the court's findings that it is in Emery's best interests that Sydni be granted custody. Sydni testified that she and Goschke have their own home, have been in a relationship for over a year, and have lived together for 3 months. Additionally, at the time of trial, Sydni was employed at a restaurant and had been employed there for 3 years. She was eligible for a management position which would increase her earning potential. On the other hand, Phillip was not employed at the time of trial, although he testified that he had submitted applications at multiple locations in Omaha. He had been released to return to work as of March 21, 2018, but had not found steady employment. Further, Phillip was living in his grandmother's house with his father and stepmother. His grandmother paid the rent and bills, and did the grocery shopping for the family. Phillip has no independent financial ability to provide for Emery.

Although the parties both testified that they had difficulty communicating, the record supports the court's supposition that Sydni may facilitate communication with Phillip more readily than Phillip would. Sydni testified that she would discuss matters concerning Emery with Phillip if she were granted custody. And Goschke testified that he recognized it was important for Emery to maintain her relationship with Phillip.

On the other hand, the record indicates that Phillip has not fostered a positive relationship with Sydni. There were multiple occasions where Phillip failed to drive Emery to the arranged meeting point because he could not afford gas, and Phillip was found to be in contempt of court for failing to return Emery to Sydni. Phillip also called for welfare checks on Emery while she was in Sydni's care, which turned out to be unfounded. Thus, after reviewing the record, the court's order awarding Sydni custody of Emery was not an abuse of discretion.

In considering the relevant best interests factors, it is apparent that both parties have a positive relationship with Emery. Emery is only 4 years old and, therefore, did not testify regarding any parental preference. Further, it appears that Emery's needs and well-being are being met by both parties. Although Phillip argued at trial, and argues on appeal, that there was evidence that Sydni abused Emery due to the bruises he observed on her, Sydni denied the accusations. The

record contains one medical record from November 2016 indicating that Phillip took Emery to the emergency room to have her evaluated, and two "small bruises to her right lateral hip" and a "faint bruise to her right shin" all approximately "dime-sized" were found. Brewer testified that they took Emery to the emergency room "several times" due to their concern about "big bruising around [Emery's] ankles" but the record does not support this contention. An exhibit offered by Phillip shows that he requested medical records regarding Emery from the emergency room for the period April 2015 through April 2018. Only the November 2016 record described above is attached in response to that request. No other medical records were offered.

After hearing and observing the witnesses, the district court did not find credible evidence of abuse. We give deference to that determination. In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hiller v. Hiller*, 23 Neb. App. 768, 876 N.W.2d 685 (2016).

Further, at the time of trial, Sydni was in a stable relationship with Goschke, and they were living in their own home, with Sydni's son. While Sydni admitted to sending nude photos to Phillip and engaging in a sexually suggestive conversation, that does not indicate that it would not be in Emery's best interests to reside with Sydni. She explained why she sent the messages and admitted that it was "the stupidest thing" she had ever done.

The record further reveals that both parties have an emotional bond with Emery, both parties are healthy, and both have the parental capacity to care for Emery and provide for her educational needs, although Phillip is financially dependent on Brewer to assist him in caring for Emery. Although the court's award of physical custody of Emery to Sydni will disrupt Emery's relationship with Phillip, as the court noted, Emery is approaching school age, and the parenting plan calling for 7 consecutive weeks with each parent simply will no longer work. The court awarded Phillip liberal parenting time which will allow him to maintain a relationship with Emery. The record supports a finding that Sydni can offer a better environment for Emery; therefore, when considering the relevant best interests factors, the district court did not abuse its discretion in awarding Sydni custody of Emery.

On appeal, Phillip argues that the district court failed to consider evidence that Sydni had used drugs in the past and had been in a relationship with Bishop, a known drug user and someone who abused her. The court addressed both of these issues in its order, but dismissed them because Sydni was no longer in a relationship with Bishop and no longer used drugs. We therefore reject this argument.

Phillip also argues the evidence does not indicate that Sydni provided proper care for Emery, maintained appropriate housing, or had better employment opportunities. He relies upon his grandmother's testimony regarding concerning habits Emery demonstrated upon her return from Sydni's care, such as gorging herself, hoarding food, and demonstrating purging techniques. However, the credibility of the witnesses is a determination for the trial court, and we give deference to its conclusions. We likewise find that the record supports the court's decision that Sydni maintained appropriate housing and has better employment opportunities than does Phillip.

Phillip further argues on appeal that the district court did not consider evidence that Goschke was alienating him from Emery, nor did it consider evidence that Sydni sent him nude

photos which reflected on her moral fitness to parent Emery. Goschke testified that he loves Emery and cares for her like his own daughter. However, he asserted that he did not encourage her to call him "dad" and stated that it was important for Phillip to maintain his relationship with Emery. Therefore, the record indicates that Goschke was not attempting to alienate Phillip from Emery, but rather loved and cared for her as a stepparent would. Additionally, as iterated above, Sydni admitted to sending nude photos of herself to Phillip. However, such photos do not negate the fact that Sydni is in a better position to provide and care for Emery.

Based upon the record before us, we find that the district court did not abuse its discretion in awarding Sydni custody of Emery. It is apparent that both parents love and care for Emery, and neither parent is unfit to parent Emery. However, the record supports the court's determination that Sydni can offer a better environment for Sydni due to her stable employment with opportunities for advancement, and her housing situation is better for Emery than what Phillip can offer. In contested custody cases, where material issues of fact are in great dispute, the standard of review and the amount of deference granted to the trial judge, who heard and observed the witnesses testify, are often dispositive of whether the trial court's determination is affirmed or reversed on appeal. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Accordingly, the district court did not abuse its discretion in awarding Sydni custody of Emery.

## 2. REMOVAL

We next address the district court's determination that it was in Emery's best interests to allow Sydni to remove her to Michigan. As iterated above, the Nebraska Supreme Court stated in *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000), the separate analyses of whether custody should be modified and whether removal should be permitted necessarily become intertwined. Thus, although argued by Phillip as being necessary, we question the applicability of the *Farnsworth* removal factors to the present case where Sydni had already located to Michigan at the time the initial parenting plan was entered. However, for the sake of completeness in the determination of Emery's best interests, and to maintain consistency with prior case law, we briefly discuss the *Farnsworth* removal factors as they relate to Emery's best interests. See, *Coleman v. Kahler*, 17 Neb. App. 518, 529, 766 N.W.2d 142, 150 (2009), quoting *In re Interest of Eric O. & Shane O.*, 9 Neb. App. 676, 617 N.W.2d 824 (2000) ("'if the instant case is determined by the children's best interests, then we can conceive of no good reason why *Farnsworth* [internal citation omitted] would not be properly included in the analytical framework to determine the children's best interests'"). See, also, *Rommers v. Rommers*, 22 Neb. App. 606, 858 N.W.2d 607 (2014) (once district court has made initial custody determination, it should not skip over majority of removal analysis if parent has requested or, as in this case, has already left state with child).

*Farnsworth* created a two-step analysis for removal cases. First, the custodial parent must satisfy the court that he or she has a legitimate reason for leaving the state. *Speers v. Johns*, 26 Neb. App. 889, 923 N.W.2d 777 (2019). This analysis does not focus on the child's best interests, and as stated above, we have considered the *Farnsworth* factors as they relate to a child's best interests merely as considerations when strict application of *Farnsworth* is not required. Therefore, we question whether a legitimate reasons for leaving the state must be proven when the *Farnsworth* test does not strictly apply and we are applying its factors solely to determine the child's best

interests. However, because Phillip does not contest that Sydni had a legitimate reason for "leaving" the state and the facts that she had relocated at the time of the original parenting plan, that her time in Nebraska was brief, and that Michigan was her home where her family resided, we find her relocation to Michigan was for a legitimate reason.

*Farnsworth* then enunciated three broad considerations to evaluate in determining whether removal is in the child's best interests: (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation. *Coleman v. Kahler, supra*.

### (a) Each Parent's Motives

The ultimate question in evaluating the parties' motives is whether either party has elected or resisted a removal in an effort to frustrate or manipulate the other party. *Speers v. Johns, supra*. Here, we find no evidence that either party has acted in bad faith. As iterated above, Sydni resided in Michigan at the time the parenting plan was agreed to and seeks to relocate Emery to Michigan in order to have sole custody of her. Likewise, Phillip seeks sole custody of Emery in Nebraska. Given Emery's age, the agreed upon custody split of Emery is no longer workable. There is no indication that either party elected or resisted removal in an effort to frustrate or manipulate the other party. The parties' motives being equal, this factor does not weigh for or against removal.

### (b) Quality of Life

In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the child and the custodial parent, a court should evaluate the following considerations: (1) the emotional, physical, and developmental needs of the child; (2) the child's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the child and each parent; (7) the strength of the child's ties to the present community and extended family there; (8) the likelihood that allowing or denying the removal would antagonize hostilities between the two parties; and (9) the living conditions and employment opportunities for the custodial parent because the best interests of the child are interwoven with the well-being of the custodial parent. *Speers v. Johns, supra*. The list of factors to be considered in determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the parent seeking removal and of the children should not be misconstrued as setting out a hierarchy of factors. *Id*. Depending on the circumstances of a particular case, any one factor or combination of factors may be variously weighted. *Id*. We note that several of the factors listed above are inapplicable in the present case, or have been addressed above; therefore, we briefly summarize whether the factors favor removal, are neutral, or weigh against removal.

### (i) Factors Favoring Removal

The primary factor which favors removal is that Sydni can better meet Emery's emotional, physical, and developmental needs. Although both parents appear to have been equally involved

in providing for Emery's needs, Sydni has done so more independently. She has her own home with stable employment. Emotionally, she is in a long-term relationship with Goschke. Life in Michigan will foster Emery's relationship with her half brother, providing her emotional development. The evidence also reveals that Sydni better meets Emery's developmental needs with routine and set bedtimes. Phillip, however, resides in his grandmother's home, where he is dependent upon her to pay all the expenses. At the time of trial, he was unemployed and was not able to independently support himself or Emery. The evidence indicates that there are times when Emery is awake anywhere from 10 p.m. to 3 a.m. and Phillip provides less routine. Consequently, this factor weighs in favor of removal.

### (ii) Neutral/Inapplicable Factors

We find that the remaining factors are either neutral, favoring neither parent, or inapplicable under the facts of our case. At the time of trial, Emery was 4 years old and did not express a parental preference. Because Sydni was already living and working in Michigan, her income will not be enhanced, nor will her housing conditions be improved. There is no indication that educational opportunities for Emery are better in either Nebraska or Michigan.

As stated above, both parties have a good relationship with Emery. Additionally, Emery has close ties with both communities and has extended family in both states, although her half brother resides in Michigan. The record indicates that both parties are already hostile with one another and have difficulty communicating. It is unlikely that allowing Emery to relocate to Michigan will increase hostilities between Phillip and Emery.

### (iii) Quality of Life Conclusion

Although many of the factors are neutral or inapplicable, the evidence supports a finding that Emery's emotional, physical, and developmental needs would be better met in Michigan. Thus, we conclude that Emery's quality of life will be improved if she relocates to Michigan.

### (c) Impact on Noncustodial Parent's Contact With Child

The third factor in the best interests determination is the impact of the move on the contact between the child and the noncustodial parent, when viewed in light of reasonable visitation arrangements. See *Speers v. Johns*, 26 Neb. App. 889, 923 N.W.2d 777 (2019). This consideration focuses on the ability of the court to fashion a reasonable visitation schedule that will allow the noncustodial parent to maintain a meaningful parent-child relationship. *Id*. Generally, a reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. *Id*.

The district court noted that "whatever decision the Court makes, the decision will have an impact on the other parent's parenting time with Emery." We find this to be true, as Emery cannot continue to be shuttled between Nebraska and Michigan every 7 weeks when she begins school. However, the court noted that it could design a reasonable parenting schedule which would allow Phillip to have liberal parenting time with Emery. The court allowed Phillip to provide Sydni with 48 hours' notice to have parenting time with Emery, in Michigan, during the school year for 3 consecutive days. There was no limit as to how frequently this may occur. The court also granted

Phillip 1 week of parenting time during Emery's winter break, the entirety of her spring break, and half of Emery's summer break. Under the circumstances, this is a reasonable parenting plan which will allow Phillip to maintain his relationship with Emery. We therefore agree with the district court that, although Phillip's relationship with Emery will be impacted by her move to Michigan, he will have liberal parenting time with her.

### (d) Best Interests Conclusion

The district court concluded that "[w]eighing all of the factors, the Court finds that [Sydni's] request to remove Emery to Michigan shall be granted." We agree. While most factors impacting Emery's best interests are neutral or inapplicable, Sydni is in a better position to provide for Emery's emotional, physical, and developmental needs. Accordingly, we find that it is in Emery's best interests to relocate to Michigan.

### VI. CONCLUSION

Upon our de novo review of the record, we find that the district court did not abuse its discretion in awarding Sydni sole custody of Emery and allowing her to remove Emery to Michigan.

AFFIRMED.